## IRWIN & LEIGHTON v. UNITED STATES.
### No. 45087.

Court of Claims.
June 3, 1946.

Prentice E. Edrington, of Washington, D. C., for plaintiff.

S. R. Gamer, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for the defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

JONES, Judge.

Plaintiffs, under a contract with the defendant, constructed the library building for The Howard University.

The University is maintained, in part, by appropriations from the Treasury of the

United States, and in part by funds secured from other sources.

The contract, dated December 5, 1936, was signed by Oscar L. Chapman, Assistant Secretary of the Interior, as contracting officer for the defendant, and by plaintiffs, a partnership.

The plaintiffs were to furnish all materials and perform all work in accordance with plans and specifications which were made a part of the contract. The consideration was $817,225.

Albert I. Cassell was designated as architect. Edward M. Poynton, an engineer in the Department of the Interior, in a memorandum signed by Oscar L. Chapman, was designated to represent the contracting officer and was given broad powers as set out in finding 6. M. E. Davis, a representative of the plaintiffs, frequently conferred with these representatives.

Work was to begin within ten calendar days after receipt of notice to proceed and was to be completed within 325 calendar days thereafter. Notice was received December 21, 1936.

There were delays due to weather conditions, strikes, and extra work for which extensions of time were granted. Other delays for which plaintiffs claimed damages are pleaded in five separate causes of action.

The facts are set out in great detail in the findings and will not be repeated here except in so far as may be necessary to a clear statement of the issue involved. The first cause of action covers several items.

### First Cause of Action.

#### Delay in demolition.

■ An existing old brick building, known as the "Main Building" was on the site of the proposed new building, and was occupied by the University. Demolition was necessary. It was also necessary to move the president's house which was nearby. On December 23 plaintiffs began stripping the interior of the building while it was still partially occupied. Demolition included relocation of the existing underground electric distribution system, gas, sewer, and telephone services.

The entire building was not available to plaintiffs until January 4, 1937, a twelve days' delay, but plaintiffs were able to do the equivalent of five days' work during this period, so that the net job delay was seven days.

The architect extended the time 13 days.

#### Delay in removal of telephone cables.

■ Delay was alleged in removing the telephone cables. The telephone company maintained service for the University under a contract. The switchboard was located in the Main Building. The telephone company would not disconnect the main switchboard until ordered to do so by the University. It was plaintiffs' obligation to build manholes and install ducts. Some of these were to be used by the telephone company. The record is not clear as to just when the work on the manholes and ducts had progressed to the point where the change could be made. There was some delay to plaintiff and an extension of time of seven days was granted, but the defendant is not responsible for any damages that may have been caused by this delay.

#### Delay in ordering foundation changes.

■ There was some delay in the changes in the plans for the foundation of the president's house as set out in findings 24 to 28. The plaintiffs were asked to submit a proposal for the changes indicated. They did so, and complain of the delay in acceptance. Whatever delay may have occurred was concurrent with the delay in demolition and other work on the library and therefore did not delay the completion of the entire work.

#### Delay in mechanical and shop drawings.

■ Beginning January 4, 1937, and at various times for several weeks plaintiffs submitted to the architect shop drawings and schedules in compliance with specifications, which specifications also called for action by the architect with reasonable promptness.

Bidders on the job had been required to submit proposals on a number of alternatives. One of these related to the installation of an air-conditioning system in the bookstack portion of the building. If the defendant decided not to install air condi-

tioning, the contract price was to be appropriately reduced.

Prior to the awarding of the contract the architect had decided to include but when the contract was awarded the defendant decided not to include air conditioning. Later the defendant's engineer concluded that it should be installed. Defendant rejected plaintiffs' proposal as to cost and plaintiffs proceeded on the assumption that air conditioning would not be included.

The architect again consulted with the contracting officer and officers of The Howard University and on April 18, 1937, advised plaintiffs that defendant had prepared an order reinstating air conditioning. In the meantime the cost of air conditioning had greatly increased. Plaintiffs' proposal was again rejected.

A definite decision was important, since if air conditioning were to be installed it would be necessary to make the structural steel stronger in order to carry the facilities and support the weight of the cooling tower. The bookstacks consisted of eight floors of concrete and steel construction.

The shop drawings were not finally approved until August 8, 1937, greatly delaying construction all along the line.

Plaintiffs claimed an over-all delay of 213 days, but in the meantime there had been delays on account of a strike and because of rain and by the plumbing contractor. Also a reasonable time should be allowed for checking and approval.

Taking all these things into account we find there was an over-all delay on the job of 100 days for which defendant is responsible.

### Delays relating to electrical outlets in bookstack areas.

█ The drawings and specifications required installing outlets for lights in the ceilings over the aisles in the bookstack areas. Bidders had been required to submit alternative bids for the omission of these lights, with appropriate price reductions, and this alternative had been accepted when the contract was awarded.

Defendant later wished to reinstate these items. In response to requests plaintiffs on October 29, 1937, submitted three proposals for the installation of three separate groups of outlets. The additional work required great exactness in drawings and execution. Holes had to be bored through steel beams. Rigid conduits had to be woven through beams and carefully fitted into other parts of the structure.

The proposals were not accepted until December 2. We find that this was 22 days beyond a reasonable time for acceptance.

### Strikes resulting from employment of nonunion workmen by The Howard University.

█ Plaintiffs were to do certain interior repair work on the president's house after it was moved. The house was needed and by agreement this was eliminated from plaintiffs' contract. The moving of the house was completed January 3, 1938, and with the approval of the plaintiffs was turned over to The Howard University on January 4.

The University decided to make some additions and for this purpose entered into a contract with a nonunion firm for alterations, improvements, and repairs.

When the nonunion contractor began work on the president's house plaintiffs' employees on the library building immediately stopped work and plaintiffs' work was entirely closed down because of the strike for a period of 25 days.

While about two-thirds of the income of the University is derived from funds supplied by the United States, and the defendant's agencies supervise the expenditure of these funds, there is no proof of any other supervision of control of the University by the United States. The work on the president's house had been eliminated from plaintiffs' contract and was done under the direction of the University from funds other than those supplied by the defendant.

In the circumstances it is not proved that the strike resulted from any act or omission on the part of the defendant.

### Damages—temporary heat, January-April, 1938.

█ On account of delays by defendant in delivering possession of the Main Building, in approving shop drawings in respect

to air conditioning and electric outlets, plaintiffs were obliged to heat the building between January 27 and April 27, 1938, which otherwise would not have been necessary. The additional cost to the plaintiffs was $1,400.40, which was a reasonable expenditure, and which plaintiffs are entitled to recover.

### Damage-increased field costs.

■ Because of the various delays—summarized in finding 57, for which defendant was responsible, plaintiffs' field costs were increased in the sum of $4,309.89, which plaintiffs are entitled to recover. Plaintiffs' general overhead costs, as set out in finding 58, were increased in the amount of $5,446.38, for which defendant is liable. Phoenix Bridge Co. v. United States, 85 Ct.Cl. 603, 628.

### Cullen claim—temporary heating.

■ Plaintiffs claim, on behalf of Cullen, Inc., a corporation, subcontractor, the sum of $1,807.95, extra cost in connection with the installation of temporary heating after November 1937, which it is asserted would not have been necessary but for the delays. The delays, however, for which defendant was not responsible, made necessary the installation of temporary heating. While this extra expense was actually incurred, the defendant is not liable under the contract and specifications.

The Cullen claim for increased wages paid steamfitters is not satisfactorily proved.

### Cullen claim—overhead.

■ Plaintiffs present a claim on the ground that Cullen, Inc., was delayed concurrently with plaintiffs. This claim is established as set out in findings 65 and 66. After eliminating the delays for which the defendant was not responsible, the amount of such increased overhead for which defendant is responsible is reduced to $1,140.75. Plaintiff is denied recovery on this item on account of the fraud set out in detail in the discussion of the fourth cause of action relating to extra pipe installations. The two items are closely linked. In fact, a part of the delay which forms the basis for this overhead item grew out of the extra work in connection with the relocating

of the pipes. The fraud in one permeates the other.

### Second Cause of Action.
#### Final inspection.

■ Plaintiffs' proof of claim for damages for delay in final inspection is insufficient. There were numerous items that required correction. During August, September, and the first half of November 1938, plaintiffs were engaged in completing these items of unfinished work. Even at the time possession of the building was delivered to the officers of The Howard University on November 28, 1938, there were still some uncorrected minor items.

Plaintiffs, therefore, are not entitled to recover on the second cause of action.

### Third Cause of Action.

Plaintiffs have abandoned the claim for damages on the third cause of action.

### Fourth Cause of Action.

■ Plaintiffs installed, in accordance with the drawings, certain plumbing and heating pipes beneath the beams supporting the second floor of the building. Thereafter the architect discovered that because of an error in the drawings, the plaster ceiling could not be installed below the pipes without infringing on the tops of the windows. To make correction it was necessary to remove the pipes, burn holes through the beams and run the pipes through these holes. Plaintiffs performed this work under an agreement between the architect, the subcontractor Cullen, and plaintiffs that it would be done at actual cost, plus a percentage for the subcontractor's overhead, that a bill therefor would be rendered the architect, who would forward it to the contracting officer for his approval as compensation for extra work.

On January 21, 1938, Cullen submitted his bill to the plaintiffs for $807.05, as actual costs, plus $80.70 for overhead.

May 10, plaintiffs directed a letter to the Secretary of the Interior "via Albert I. Cassell, architect," submitted the estimate of $887.75 as the cost of the work, and delivered the letter to the architect.

Receiving no payment or notice, plaintiffs again on January 30, 1939, directed another letter in a similar manner calling

attention to the previous letter. Such manner of address and delivery had been the custom of the parties on the job.

The architect did not forward any of these letters either to the contracting officer or to the Secretary of the Interior.

He withheld approval and forwarding of the letters in part for the reason that he objected to the first account which he claimed Cullen had given him for $1,100. Then Cullen sent an account to plaintiffs for $976.52. The architect again objected. Cullen then reduced the account to $887.75, presented in his bill on January 21, 1938.

The architect, who was familiar with the work that had been done, still believed the amount too high. A second reason given by the architect for not forwarding the letters was that he did not want to jeopardize prompt payment of a large sum that was still unpaid for other work on the contract.

The reasonable value of the work performed in relocating the pipes was $600. Cullen had knowingly raised the amount to cover $200 which he had secretly paid to Davis, plaintiffs' manager, for good will. Plaintiffs were not aware of this fact when they presented their bill on May 10, 1938, nor at the time their petition was filed in this case.

Defendant claims that because of the deception and because a written order was not given plaintiffs are not entitled to recover.

Since the letters and claims were addressed and delivered in the customary way, and since the defendant received the benefit of the work, we feel that the item of $600 should be paid, but for the fact that a fraud was attempted to be practiced against the Government by the parties to the transaction. In the circumstances by the terms of Section 172 of the Judicial Code the entire claim is forfeited to the Government. 28 U.S.C.A. § 279, 36 Stat. 1141. It is true this attempt was made without the knowledge of plaintiffs, but the subcontractor, who is the real party at interest in this item, participated in the attempt and paid the money to plaintiffs' manager. The record discloses that plaintiffs have not paid this item to the subcontractor. Since the plaintiffs' action on this item is in behalf of the subcontractor, we have no choice but to declare the entire item barred under the plain provisions of the statute. Blume v. United States, 81 Ct. Cl. 210, 214.

### Fifth Cause of Action.
### Heat and electricity furnished by The Howard University.

Between July and November 1938 plaintiffs purchased from the University electricity, and steam for heating the building, the cost being $704.08. On June 5, 1939, The Howard University sent plaintiffs a bill for this amount. Plaintiffs declined to make payment, asserting that the building was substantially completed August 1, 1938, and could have been occupied by the University as of that date, and that consequently plaintiffs should not be charged with the cost of heat and electricity after August 1, 1938.

The contracting officer replied calling plaintiffs' attention to Article 10 of the contract which made plaintiffs responsible for all work until completion and final inspection.

Defendant has withheld $2,500 from the amount which was concededly due plaintiffs for work performed until this item and another item had been paid.

The second item was for embossed lettering on a bulletin board which had been done by Lamb Seal & Stencil Company for the sum of $36.93, which was a reasonable price for such work. Plaintiffs assert that they were not required to do this work or have it performed. A note below one of the drawings provided, among other things, for flexible cardboard strips covered with black paper and embossed with white letters. The architect decided that this was the obligation of the plaintiffs. We agree.

We think plaintiffs should be charged with this latter item and also with the item of $704.08 which was expended for heat and electricity, and which was a part of plaintiffs' obligation.

The defendant concedes that after offsetting these two items there is a balance due

plaintiffs in the sum of $1,758.99 for work performed.

The plaintiffs are entitled to recover the sum of $12,915.66. It is so ordered.

WHALEY, Chief Justice, and WHITAKER, and LITTLETON, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.